UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-28-2015
```

RISE-N-SHINE, LLC,

                                        Plaintiff,

        -v-                                                         No. 14-cv-1305 (RJS)
                                                                    OPINION AND ORDER
ROBIN DUNER-FENTER, *et uno*,

                                        Defendants.

RICHARD J. SULLIVAN, District Judge:

        Plaintiff Rise-N-Shine, LLC ("Rise-N-Shine") brings this suit against Defendant Robin

Duner-Fenter and GetAwayGrey, LLC (collectively, "Defendants"), alleging trademark

infringement in violation of Section 32 of the Lanham Act and related claims. Now before the

Court is Defendants' motion *in limine* to exclude the testimony of Plaintiff's expert witness, Dr.

Sara Parikh ("Parikh"), and the survey results compiled by Parikh. For the reasons set forth below,

Defendants' motion is denied.

A. Background

        The Court assumes the parties' familiarity with the case, and recites only those facts

necessary to resolve the instant motion. Plaintiff markets and sells a dietary supplement intended

to prevent the growth of gray hair, under the mark "GO AWAY GRAY" (the "Disputed Mark")

(Doc. No. 2 ("Compl.")) ¶¶ 13–15.) On February 27, 2014, Plaintiff filed this action, alleging that

Defendants' use of the mark "GET AWAY GREY" in marketing and selling a competing product

constitutes, *inter alia*, trademark infringement. (*See generally* Compl.) One of Defendants'

defenses is that the Disputed Mark is descriptive, rather than suggestive, and that accordingly the

mark is not protected absent a secondary meaning, which the parties agree is absent here. (*See*

Doc. No. 45 ("Def. Br.").)  In seeking to rebut this defense, Plaintiff retained Parikh as an expert to conduct a survey regarding whether the purchasing public views the Disputed Mark as descriptive or suggestive.  (Doc. No. 46 ("Opp'n.") at 1.)  Parikh conducted an online survey adapted from and modeled after the *Teflon* survey, which is commonly used to determine whether a trademark is generic.  (Opp'n at 2; Def. Br., Ex. A ("Parikh Report") at 6.)

Specifically, in Parikh's survey, respondents were asked whether the Disputed Mark refers to a product's brand name or describes a product's function or purpose.  (*Id*. at 12.)  The survey's methodology was as follows.  First, the pool of respondents was limited – through screening questions at the beginning of the survey – to adults between the ages of 35 and 55, residing in the United States, who had purchased vitamins or supplements in the previous six months, and who reported that they would "definitely" or "probably" consider buying vitamins or supplements "to promote healthy hair" in the next six months.  (*Id*. at 7.)  In all, 208 participants qualified after these screening mechanisms.  (*Id*. at 11.)  Next, respondents were informed of the difference between a brand name and a product description, and given two test phrases ("ONE A DAY" and "IMMUNITY BOOSTER") to evaluate whether they understood that distinction.  (*Id*. at 10.)  Respondents were then asked whether they believed the Disputed Mark – as well as two other marks, "SLIM-FAST" and "MUSCLE BUILDER," which were included to minimize potential bias – refers to a product's brand name or describes a product's function or purpose, or whether the respondent did not know.  (*Id*. at 12.)  Respondents were also asked, at the conclusion of the survey, whether they had gray hair, and 176 of the 208 respondents answered affirmatively.  (*Id*. at 12.)  Ultimately, 49% of survey respondents – and 51% of respondents with gray hair – answered that they believed the Disputed Mark was a brand name.  (*Id*. at 14.)  Parikh then excluded all those respondents who incorrectly identified either SLIM-FAST or MUSCLE BUILDER as a

brand name or product description, which left 160 respondents. (*Id*.) Of those respondents, 56% in total, and 59% of those with gray hair, answered that they believed the Disputed Mark was a brand name. (*Id*.) According to Parikh's report, these majorities reflect that, across the national population of adults who would qualify for the survey, more people believe the Disputed Mark is a brand name than a product description. (*Id*.)

Defendants filed the instant motion seeking to exclude testimony from Parikh on December 1, 2014. (Doc. No. 44.) Plaintiff submitted a brief in opposition on December 12, 2014 (Opp'n), and the motion was fully briefed following Defendants' reply on December 22, 2014 (Doc. No. 48 ("Reply")). Defendants assert that the survey results are inadmissible because (1) the survey is not helpful to the jury, as it involves an issue the jury can decide on its own; (2) the survey's population is improper; and (3) Parikh's exclusion of the 23% of respondents who responded incorrectly to the test phrases was inappropriate.

## B. Discussion

"Marks are classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384–85 (2d Cir. 2005) (alteration and internal quotation marks omitted). "Descriptive marks are those consisting of words identifying qualities of the product." *Id*. at 385. Suggestive marks, on the other hand, "are those that are not directly descriptive, but do suggest a quality or qualities of the product, through the use of imagination, thought and perception." *Id*. (citation and internal quotation marks omitted). Classification of a mark among the four categories is a factual question, which turns on "how the purchasing public views the mark." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999). Significantly, in resolving this question of fact, the jury "is not the designated representative of the purchasing public, and [its] own

3

perception of the mark is not the object of the inquiry.  Rather, the fact-finder's function is to

determine, based on the evidence before it, what the perception of the purchasing public is."  *Id.*

### 1.  Helpfulness to the Jury

Defendants first argue that the survey results and Parikh's testimony should be excluded

because the results would not be helpful to the jury, since "the jury is capable of answering the

question [of whether the Disputed Mark is suggestive or descriptive] without the assistance of an

expert survey."  (Def. Br. at 4.)  While acknowledging that survey results are commonly admitted

as evidence in the Lanham Act context, Defendants assert that such evidence is not relevant to the

instant dispute, and is properly admitted only where there is a dispute as to whether a mark is

generic, whether there is a likelihood of confusion as to a mark, or whether a mark has a secondary

meaning.  (*Id.*)

The parties do not cite to any cases from this Circuit in which a court has considered the

issue of whether survey results are relevant to the distinction between a suggestive and descriptive

mark, and the Court is not aware of any.  However, the Court concludes that the logic that applies

to the admissibility of survey results in other trademark disputes applies here as well.  For example,

as with the distinction between descriptive and suggestive marks, juries are more than capable of

undertaking a factual inquiry into whether or not a mark is generic; nevertheless, survey results

are still one of the primary types of evidence presented to a jury for a determination of whether a

mark is generic.  *See Tiffany and Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 482

(S.D.N.Y. 2014) (listing surveys as one of the five primary types of evidence in determining

genericness).  The categories of trademark protection are organized in a continuum consisting of

four levels of strength, and the jury is tasked with determining which of those four categories the

mark belongs in from the perspective of the purchasing public; the distinction between generic and

the other three categories should be no different than the distinction between suggestive and

4

descriptive.  Indeed, Second Circuit case law explicitly anchors the jury's factual analysis to how the *purchasing public* would view the mark, such that the jury "is not the designated representative of the purchasing public, and [its] own perception of the mark is *not* the object of the inquiry." *Lane Capital Mgmt.*, 192 F.3d at 344 (emphasis added).  The jury's role as to this dispute is simply to determine how the purchasing public at large would interpret the mark, *id.*, and survey results demonstrating whether this group would think of the Disputed Mark as descriptive or suggestive are certainly relevant to that analysis.[1]

Moreover, while apparently no court in this Circuit has addressed this issue head on, courts from other circuits have allowed the consideration of survey results in determining whether a mark is descriptive or suggestive.  *See, e.g.*, *Anheuser-Busch Inc. v. Stroh Brewery Co.*, 750 F.2d 631, 635 (8th Cir. 1984) ("Stroh also argues that LA is descriptive, not suggestive. . . . As with genericness, the descriptiveness of a mark is to be determined from the standpoint of the average prospective purchasers.  The district court therefore properly looked to the consumer survey in reaching its conclusion that LA stands for an idea which requires some operation of the imagination to connect it with the product." (alterations, citation, and internal quotation marks omitted)); *cf. Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1116 (9th Cir. 2010) (reversing grant of summary judgment depending on whether mark was descriptive or suggestive, where "[g]iven the record before us, which *lacks comprehensive consumer surveys*, we cannot say

---

[1] The Court notes that the survey asked respondents whether the Disputed Mark "refers to a product's brand name[] or describes a product's function or purpose" (Parikh Report at 12), and that this distinction is not necessarily the same as asking whether it is descriptive or suggestive.  Specifically, just because a mark is a brand name (and perceived as such) does not mean that it is suggestive rather than descriptive.  However, Defendants did not argue that the survey is irrelevant on this basis.  (*See, e.g.*, Reply at 3 ("Dr. Parikh uses the *Teflon* methodology, but instead of asking about consumers' impressions of whether a known mark is generic, it asks if consumers think an unknown phrase – go away gray – is descriptive or suggestive.").)  In any event, the test for relevance is whether evidence has "*any tendency* to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401(a) (emphasis added), and the Court finds that evidence of the purchasing public's understanding of the Disputed Mark as a brand rather than as a description of the product meets this standard.

with confidence precisely what consumers will understand the [trademarked] phrase . . . to mean, nor are we confident that our own understanding of the phrase is an adequate substitute" (emphasis added)).  Accordingly, the Court concludes that the survey would be helpful to the jury, and that it should not be excluded on this basis.

### 2. Methodological Flaws

Defendants also argue that the survey results should be excluded because the universe of respondents was defined incorrectly and because Parikh improperly excluded 23% of respondents based on the fact that they responded incorrectly to either or both of the "SLIM-FAST" and "MUSCLE-BUILDER" questions.  However, a survey "is only inadmissible if its flaws destroy all of its relevance.  Assertions of methodological errors in a survey bear exclusively on the weight to be given the survey rather than bearing on an admissibility determination under Fed. R. Evid. 403." *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07-cv-5804 (GEL), 2009 WL 959775, at *11 (S.D.N.Y. Apr. 8, 2009).  The Court has little difficulty in concluding that methodological errors in Parikh's survey – if there are any – do not rise to the level of destroying all relevance, and thus that any flaws bear exclusively on the weight of the results rather than their admissibility.

As to the universe of respondents, Defendants assert that the "potential purchasers" to which a survey regarding the Disputed Mark must be directed are people who want to reverse or prevent gray hair, not merely people who will definitely or probably purchase vitamins or supplements to promote *healthy* hair in the next six months. (Def. Br. at 5; Reply at 5.)  However, the three main uses of Plaintiff's supplement are prominently announced on its label, and include, in large font, that it "PROMOTES Thicker, Healthier Hair. (Opp. at 8; Opp., Ex. 1 (capitalization in original).)  Accordingly, people interested in purchasing a supplement to support healthy hair more generally are at least arguably part of the purchasing public for the product.  In any event,

6

respondents were also asked whether they had gray hair, and 86% of the respondents on which Parikh relied with regard to her ultimate conclusions did identify themselves as having gray hair. This both demonstrates that the total population of respondents was largely composed of people with gray hair and allows each party to present statistics both as to the total pool of respondents and the subset of the pool consisting of people with gray hair.  To the extent that this universe of respondents is overbroad, it is not so overbroad as to destroy the relevance of the survey results. *See Franklin Res., Inc. v. Franklin Credit Mgmt. Corp.*, No. 95-cv-7686 (CSH), 1997 WL 543086, at *5 (S.D.N.Y. Sept. 4, 1997) ("In sum, I find that the survey's universe was overbroad.  The question then presented is whether this flaw is so severe that the survey must be excluded from evidence [pursuant to Rule 401 or 403]."); *see also Schieffelin & Co. v. Jack Co. of Boca*, 850 F. Supp. 232, 246 (S.D.N.Y. 1994) (although universe of respondents was "somewhat overbroad" where defined as all those ages 21–64, rather than as likely purchasers of Dom Perignon Champagne, "such imperfections . . . are not fatal, but are factored into the weight that should be given to the evidence").

Likewise, the Court finds that Parikh's exclusion of 23% of respondents based on their incorrect response to the test phrases does not constitute a methodological error requiring exclusion of the survey results.  The mere fact that Parikh had and used *other* means of excluding respondents who did not understand the product/description distinction at the heart of the survey does not mean that adjusting the data to remove respondents who later failed the test is necessarily improper.  In any event, Parikh's report also included the results without adjusting for the 23% of respondents who were excluded, and so to the extent Defendants believe the exclusion undermines the survey results, they are free to cross-examine Parikh on it.  However, the Court will not prohibit Plaintiff from offering the survey results or the testimony of Parikh.

7

C. Conclusion

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' motion *in limine* to exclude the testimony of Dr. Sara Parikh and the results of her survey is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry number 44.

SO ORDERED.

Dated:      February 28, 2015
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE